IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTHONY FREEMAN,

           Plaintiff,

v.

OFFICER WILLIAM MURPHY, et al.,

           Defendants.

CIVIL ACTION
NO. 13-1579

**OPINION**

**Slomsky, J.**                                                                                                            February 24, 2014

## I.    INTRODUCTION

Anthony Freeman ("Plaintiff") brings this action against Police Officer William Murphy ("Officer Murphy), an unknown police officer ("Unknown Officer"), and the City of Chester, following his arrests on April 2, 2011 and November 21, 2012.

In the Amended Complaint, Plaintiff asserts the following claims in five counts: (1) violation of his right to be free from excessive force, false arrest, false imprisonment, and malicious prosecution pursuant to 42 U.S.C. § 1983 (Count I)[1]; (2) failure to train, supervise, and discipline against the City of Chester pursuant to 42 U.S.C. § 1983 (Count II); (3) assault and battery under Pennsylvania state law (Count III); (4) malicious prosecution under both 42 U.S.C. § 1983 and Pennsylvania state law (Count IV); and (5) intentional infliction of emotional distress (Count V).

Presently before the Court is Defendants' Motion to Partially Dismiss the Amended Complaint and Plaintiff's Response in Opposition. (Doc. Nos. 11, 12.) Defendants seek to

---

[1] Plaintiff makes the same claim for malicious prosecution under 42 U.S.C. § 1983 in both Counts I and IV. The decision of this Court on the sufficiency of this claim will apply to both Counts.

dismiss Counts II and IV.[2]  For reasons that follow, the Court will grant in part Defendants' Motion to Partially Dismiss the Amended Complaint with respect to Count II.  The Court will deny the Motion with respect to the malicious prosecution claim contained in Counts I and IV.  The case therefore will proceed to discovery on Counts I, III, IV, and V.

**II.   BACKGROUND**

Viewing the allegations in the Amended Complaint in the light most favorable to Plaintiff, he alleges that on April 2, 2011, he attended his cousin's birthday party on the 800 block of Hinkson Street in Chester, Pennsylvania.  (Doc. No. 9 at ¶ 8.)  Sometime between 12:00 p.m. and 1:00 p.m., Plaintiff left the party and began walking down the street to his mother's house.  (Id. at ¶ 9.)  As he was walking, Officer Murphy assaulted Plaintiff without warning or justification, by grabbing the hood of his sweatshirt, dragging him by his hood, pinning him against a wall, and choking him around his neck.  (Id. at ¶¶ 10-11.)  Officer Murphy also screamed and cursed at him.  (Id. at ¶ 12.)  Together with Unknown Officer, Officer Murphy arrested Plaintiff and issued him a citation for Disorderly Conduct of a Hazardous Offensive Nature.  (Id. at ¶ 13.)

According to the Amended Complaint, Plaintiff was never issued a summons to appear before a Magisterial Court in the City of Chester in connection with this incident.  (Id. at ¶ 14.)  On November 21, 2012, however, an arrest warrant was issued for Plaintiff by the Magisterial Court.  (Id. at ¶ 15.)  Pursuant to the warrant, Plaintiff was arrested and incarcerated in Delaware County Prison from November 21, 2012 to November 22, 2012.  (Id. at ¶ 16.)  On December 13,

---

[2] On September 20, 2013, a hearing on the Motion to Dismiss was held.  At the hearing, Plaintiff agreed to dismiss his malicious prosecution claim under Pennsylvania state law as alleged in Count IV.  Therefore, only the claim in Count IV for malicious prosecution under 42 U.S.C. § 1983 will be considered here.

2012, Plaintiff was tried and found not guilty of the charge by Magistrate Judge Vann of the Chester Magisterial Court. (Id. at ¶ 17.) Plaintiff instituted the instant action on March 26, 2013.

### III.     STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal, it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 663; see Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, n. 27 (3d Cir. 2010)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011). A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

IV.     ANALYSIS

    1.     **Count II (failure to train, supervise, and discipline against the City of Chester under 42 U.S.C. § 1983) Will Be Dismissed**

In Count II of the Amended Complaint, Plaintiff asserts a municipal liability claim against the City of Chester pursuant to 42 U.S.C. § 1983. (Doc. No. 9 at ¶¶ 23-26.) Plaintiff alleges that "the City of Chester, as a matter of policy and practice, failed to discipline, train, supervise, or otherwise sanction police officers who violate the rights of citizens, including the plaintiffs, thus encouraging defendants Officer Murphy and Unknown Officer in this case to engage in the unlawful and actionable conduct described above." (Id. at ¶ 24.) Plaintiff claims that the City of Chester was on notice that they needed to train Officer Murphy and Unknown Officer prior to this incident, "as other similar incidents have occurred in the past involving defendants Officer Murphy and Unknown Officer." (Id. at ¶ 26.)

A governmental entity can only be held responsible under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694-95 (1978). In City of Canton v. Harris, the Supreme Court held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." 489 U.S. 378, 388-89 (1989). The Supreme Court has also noted that "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011). Further, a municipality's failure to train its employees must amount to "deliberate indifference to the rights of persons which whom the [untrained employees] come into contact." Connick, 131 S. Ct. at 1370-71 (citing City of Canton, 489 U.S.

4

at 388.) "[P]roving that an injury or accident could have been avoided if an [employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct" will not suffice.")  Id.

To establish a municipal liability claim, a plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was."  Id. at 658.  "Mere assertion of an entitlement to relief, without some factual showing, is insufficient."  Id.  (internal quotations omitted); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231–32 (3d Cir. 2008) (pleading standards require "a showing, rather than blanket assertion of entitlement to relief") (internal quotations omitted).

Viewing the Amended Complaint in the light most favorable to Plaintiff, it fails to identify a specific custom or policy sanctioned by the City of Chester which caused the alleged constitutional harm.  Rather, the Amended Complaint contains a general allegation that "as a matter of policy and practice, [the City of Chester] failed to discipline, train, supervise, or otherwise sanction police officers who violate the rights of citizens, including the plaintiffs, thus encouraging defendants Officer Murphy and Unknown Officer in this case to engage in the unlawful and actionable conduct described above."  (Doc. No. 9 at ¶ 24.)  Plaintiff fails to allege any specific examples of the policy or practice to which he refers.   Plaintiff also fails to provide any specific facts to support this general allegation of municipal liability.  Specific examples of training, practice, or procedure are needed to establish such a claim.  See Hewitt v. Luquis, 2012 WL 3704814, at *4 (E.D. Pa. Aug. 28, 2012) (dismissing plaintiff's failure to train claim for failing to "provide even one fact supporting a specific practice or procedure that [defendant] failed to employ"); Bradshaw v. Township of Middleton, 145 Fed. Appx. 763, 768 (3d Cir. 2005) (dismissing plaintiff's failure to train claim for failing to state "specific examples of training" needed to support such a claim); Almodovar v. City of Philadelphia, 528 Fed.Appx. 129 (3d Cir.

2013) (holding that a complaint stating that "lack of training, oversight, and rules" led to attack on plaintiff was nothing more than a conclusory allegation).

Moreover, Plaintiff does not allege the requisite contemporaneous knowledge that would establish § 1983 municipal liability under Monell and its progeny.  Instead, Plaintiff makes a general statement that the City of Chester was on notice that Office Murphy and Unknown Officer were involved in similar incidents in the past, but does not explain or elaborate on these "similar incidents" — when they occurred, what happened, or how the City of Chester's failure to train caused the incidents.  Russoli v. Salisbury Township, 126 F.Supp. 2d 821, 865 (E.D.Pa. 2000) (refusing to find that a municipality had knowledge of "similar incidents" even where plaintiff clearly established that the municipality knew of one similar instance, but only generally referred to other similar instances).

Finally, Plaintiff does not establish that the City of Chester's failure to train its police officers reflects deliberate indifference to the constitutional deprivations that Plaintiff alleges here.  See City of Canton, 489 U.S. at 389 ("Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.").  In fact, Plaintiff does not assert any type of deliberate indifference against the City of Chester in his Amended Complaint.

Given these limited allegations, Count II against the City of Chester will be dismissed.

2. **Plaintiff's Claim for Malicious Prosecution Alleged in Counts I and IV Against Officer Murphy and Unknown Officer Will Not Be Dismissed**

To establish a claim for malicious prosecution under 42 U.S.C. § 1983, a plaintiff must satisfy the following five elements:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ending in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007).

Viewing the allegations in the light most favorable to Plaintiff, the Amended Complaint alleges facts sufficient to establish the above five elements that are required to allege a malicious prosecution claim. The Amended Complaint contains the following factual allegations:

> 10. While walking to his mother's house without warning or justification, defendant Officer William Murphy assaulted the plaintiff by grabbing the plaintiff from behind around plaintiff's sweatshirt hood and neck.
>
> 11. Defendant Murphy then continued his assault upon the plaintiff by dragging the plaintiff by his hood, pinning the plaintiff against a wall, and choking the plaintiff around his neck.
>
> 12. While choking the plaintiff, Defendant Murphy screamed at the plaintiff "What the f***, you think you can just stand your mother******* a** out here."
>
> 13. Defendants Murphy and Unknown officer then illegally arrested and then issued the plaintiff with a citation for Disorderly Conduct of a Hazardous Offensive Nature.

(Doc. No. 9 at ¶¶ 10-13.) According to these facts, Defendants initiated a criminal proceeding against Plaintiff when they arrested him without justification and issued him a citation for Disorderly Conduct of a Hazardous Offensive Nature. (Id. at ¶ 13.) This criminal proceeding ended in Plaintiff's favor when he was found not guilty of the charges by Judge Vann of the Chester Magisterial Court. (Id. at ¶ 17.) From these facts, it does not appear that Defendants had probable cause to arrest Plaintiff. Further, when viewing these facts in the light most favorable to Plaintiff, they establish that Defendants acted maliciously or for a purpose other than bringing

7

Plaintiff to justice. Finally, the arrest caused Plaintiff to suffer a deprivation of liberty. Thus, the facts as alleged in the Complaint support a claim for malicious prosecution.

In seeking dismissal of the malicious prosecution claim, Defendants argue that Plaintiff was arrested on November 21, 2012 pursuant to a warrant that was issued when Plaintiff failed to appear in court. Defendants assert that this arrest was not connected to their actions but could only have been pursuant to a warrant issued by the Magisterial Court for Plaintiff's failure to appear at a hearing. The Amended Complaint, however, alleges that Plaintiff was arrested twice, first on April 2, 2011 and again on November 21, 2012, which is the date that Defendants highlight. On April 2, 2011, Plaintiff was arrested by Officer Murphy and Unknown Officer when they issued him a citation for Disorderly Conduct of a Hazardous Offensive Nature. As stated above, the facts surrounding the April 2, 2011 arrest are sufficient to establish a claim for malicious prosecution.

Plaintiff was also arrested on November 21, 2012, but Defendants have not provided the Court with any documentation to support their argument that this second arrest was not connected to the April 2, 2011 incident or to the actions of Defendants. The Court will not speculate on the reason for the second arrest. Accordingly, Plaintiff's claim for malicious prosecution under 42 U.S.C. § 1983 as alleged in Counts I and IV will proceed.[3]

## V. CONCLUSION

Because Plaintiff has not satisfied the elements of the claim contained in Count II, the Court will grant in part Defendants' Motion to Partially Dismiss the Amended Complaint with respect to the Monell claim. (Doc. No. 11.) The case will proceed on Counts I, III, IV, and V. An appropriate Order follows.

---

[3] As noted, at the September 20, 2013 hearing, the parties agreed to dismiss the claim for malicious prosecution under Pennsylvania state law. Therefore, the above discussion relates only to the federal malicious prosecution claim.